UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KAINTE HICKEY,

                Plaintiff,                        Case No. 1:22-cv-865

v.                                       Honorable Sally J. Berens

UNKNOWN STUMP et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. On September 28, 2022, the Court denied Plaintiff leave to proceed *in forma pauperis* because he had sufficient funds to pay the entire filing fee. (ECF No. 4.) Plaintiff paid the entire filing fee on October 11, 2022. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a

court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Jones, Normington, Ritter, and Fox. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's request for declaratory relief; (2) Plaintiff's official capacity claims; (3) Plaintiff's Fourth Amendment claim; (4) Plaintiff's Eighth Amendment claims concerning issues with his meal trays and temporary placement on food loaf restriction; (5) Plaintiff's Eighth Amendment claims concerning his placement in segregation; and (6) Plaintiff's Fourteenth Amendment due process claims concerning the deprivation of his property and the issuance of a false misconduct. The following claims for damages remain in the case: (1) Plaintiff's First Amendment retaliation claims against

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Defendants Stump and Nelson; (2) Plaintiff's Eighth Amendment excessive force and sexual assault claims against Defendants Stump and Unknown Parties #1-4; and (3) Plaintiff's Eighth Amendment claim against Defendant Stump for urging another inmate to stab Plaintiff.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues Assistant Deputy Warden S. Jones, Resident Unit Manager Unknown Normington, Prison Counselor Craig Ritter, Sergeants Unknown Stump and Unknown Fox, and Corrections Officers Unknown Nelson, Unknown Party #1, Unknown Party #2, Unknown Party #3, and Unknown Party #4. Plaintiff sues Defendants in both their official and individual capacities. (ECF No. 1, PageID.2–3.)

Plaintiff alleges that on August 18, 2020, Defendants Stump, Unknown Parties #1-4, and Officer Ramirez (not a party) slammed him on the ground while he was handcuffed behind his back. (*Id.*, PageID.4.) Plaintiff contends that they slammed him so hard he began to lose consciousness. (*Id.*) Officer Ramirez and Defendants Unknown Parties #1-4 then stripped Plaintiff and held him down while Defendant Stump grabbed Plaintiff's penis and scrotum. (*Id.*) Plaintiff was then flipped over, and Defendant Stump forced his fingers into Plaintiff's rectum. (*Id.*) Plaintiff alleges that Defendants Stump, Nelson, Fox, Ritter, Normington, and Jones subsequently retaliated against him in response to his protected conduct (presumably, the filing of grievances) concerning the use of excessive force. (*Id.*)

On June 13, 2021, Plaintiff was assaulted by another inmate. (*Id.*) He contends that this occurred after Defendant Stump ordered members of a gang to assault Plaintiff. (*Id.*) Defendant

Stump told Plaintiff that he could "do whatever [he] want[ed] to [him]" and threatened to hurt Plaintiff if he did not sign off on his Prison Rape Elimination Act (PREA) grievance against him. (*Id.*, PageID.5.) Plaintiff refused to sign off on his grievance. (*Id.*) After the assault, the other inmate told Plaintiff that he did not want to stab him, but that it "was either [Plaintiff] or [him] as [he] was given the order from the leader of [his] gang." (*Id.*) When Plaintiff asked why, the other inmate stated that Defendant Stump had requested the hit and threatened to put "the whole crew on [Security Threat Group (STG)] status if [they] didn't get [Plaintiff] removed from [g]eneral [p]opulation." (*Id.*)

Subsequently, Defendant Stump entered Plaintiff's cell while he was in the shower and trashed it. (*Id.*) Plaintiff contends that his pictures, papers, and legal documents were thrown into the toilet. (*Id.*) When Plaintiff complained to Defendant Fox, Defendant Fox forged Plaintiff's signature to falsely indicate that Plaintiff had signed off on the issue. (*Id.*)

During breakfast rounds on December 16, 2021, Defendant Nelson gave Plaintiff a tray that was missing a "big portion of the food on the menu that day." (*Id.*) When Plaintiff asked for the proper portion, Defendant Nelson responded, "You're not getting s***[;] write a grievance like you did on [Defendant] Stump." (*Id.*) During lunch rounds that same day, Defendant Nelson yanked the tray back from Plaintiff's reach stating, "[Defendant] Stump sends his regards[;] no food for you." (*Id.*) Later that day, Defendant Stump stopped by Plaintiff's cell and said, "Ummm food loaf[.] I told you I am untouchable here at IBC and grievances do nothing[.] I wipe my ass with them and [I] can have you hurt (touched) anytime I want." (*Id.*, PageID.5–6.) Plaintiff contends that Defendant Nelson issued a false misconduct requesting a sanction of 7 days' food

loaf[2] in retaliation for Plaintiff writing a grievance concerning Defendant Stump's assault and sexual harassment. (*Id.*, PageID.6.) He suggests that the misconduct alleged that he misused the lunch tray even though he never received the tray. (*Id.*)

Plaintiff contends that during this time, starting on June 13, 2021, he was placed in temporary segregation pending transfer to another facility because he had been stabbed by another inmate. (*Id.*) He was held in segregation for 11 months. (*Id.*) When Plaintiff complained to the Security Classification Committee (SCC), he was "told sarcastically" that if he wrote a grievance, he would spend more time in segregation. (*Id.*) Plaintiff alleges that 400 other transfers were processed during the 11 months that he was in segregation and "subject to the same punishments[,] restrictions[,] and denial of privileges as those on detention sanctions." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights. The Court also construes his complaint to assert Fourth and Fourteenth Amendment due process claims. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief. (*Id.*, PageID.7–8.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

---

[2] "Food loaf is a substance prepared by grinding up and combining the various components of a regular prison meal[; i]t is formed into a loaf and baked." *United States v. Mich.*, 680 F.Supp. 270, 271–72 (W.D. Mich. 1988). Food loaf is prepared according to standardized recipes for food loaves maintained by the Food Service Director. It is served in a wrapper, without a tray. Food loaf must meet the nutritional standards for all prison meals. MDOC Policy Directive 04.05.120 ¶ UU (eff. June 1, 2019). A prisoner in segregation may be placed on food loaf if the prisoner is misusing food, serving trays or utensils, or if he fails or refuses to return uneaten food, trays, or dishes through the food slot. *Id.* ¶ RR. The placement on food loaf must be approved by the warden or his designee for a period of time not to exceed seven days. *Id.* ¶ SS. When notified that a prisoner is being placed on food loaf, the Food Service Director or designee must contact appropriate health care staff to determine if the prisoner has food allergies that might be affected by the food loaf, and, if so, a food loaf containing such allergens may not be given to the prisoner. *Id.* ¶ TT.

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff asserts violations of his First and Eighth Amendment rights. The Court has also construed his complaint to assert Fourth and Fourteenth Amendment violations as well.

7

### A.        Request for Declaratory Relief

As noted above, Plaintiff seeks a declaratory judgment that Defendants violated his constitutional rights. (ECF No. 1, PageID.7.) Plaintiff, however, is no longer confined at IBC, where he avers that the individual Defendants are employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Plaintiff is now incarcerated at LRF, and the individual Defendants are not employed at that facility. Plaintiff, therefore, cannot maintain his request for declaratory relief, and that claim will be dismissed.

### B.        Official Capacity Claims

Plaintiff names the individual Defendants in both their official and individual capacities. (ECF No. 1, PageID.2–3.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Here, Plaintiff seeks monetary damages, as well as declaratory relief. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Moreover, while an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity, *see Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official), "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation

of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). As discussed above, while Plaintiff seeks declaratory relief, he is no longer incarcerated at IBC, where the individual Defendants are employed. Plaintiff, therefore, cannot maintain his official capacity claims against Defendants, and those claims will be dismissed.

### C.   Individual Capacity Claims

#### 1.   Respondeat Superior Claims Against Defendants Jones, Normington, and Ritter

Plaintiff fails to allege that Defendants Jones, Normington, and Ritter took any action against him, other than to vaguely suggest, without any supporting facts, that they failed to supervise their subordinates and retaliated against him when he filed grievances concerning the use of excessive force and sexual assault. Plaintiff also identifies these individuals as members of the SCC. (ECF No. 1, PageID.3.) While he does not identify the SCC members by name, he suggests that the SCC kept him in administrative segregation because of his protected conduct. (*Id.*, PageID.7.)

To the extent Plaintiff seeks to hold Defendants Jones, Normington, and Ritter liable because of their failure to supervise their subordinates, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888

(6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." … We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Jones, Normington, and Ritter encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Jones, Normington, and Ritter were personally involved in the events surrounding the alleged mistreatment of Plaintiff by subordinates. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, because Plaintiff's claims that Defendants

10

Jones, Normington, and Ritter failed to supervise their subordinates are premised on nothing more than respondeat superior liability, those claims will be dismissed for failure to state a claim. The Court discusses Plaintiff's retaliation claim regarding the SCC below.

### 2.    Claims Against Defendant Fox

Plaintiff claims that Defendant Fox falsified his signature on a grievance to indicate that Plaintiff had signed off on that grievance. (ECF No. 1, PageID.5.) Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Moreover, Plaintiff's right to petition government was not violated by Defendant Fox's alleged falsification of his signature. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendant Fox's action could not have barred Plaintiff from seeking a remedy for his grievance. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to

assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access to the courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Fox.

### 3.     First Amendment Retaliation Claims

Plaintiff suggests that Defendant Stump retaliated against him for filing grievances and a PREA complaint by having another inmate stab him on June 13, 2021. (ECF No. 1, PageID.4–5.) He also appears to suggest that Defendant Stump trashed his cell in retaliation for the grievances and complaint. (*Id.*, PageID.5.) Plaintiff contends further that Defendant Fox retaliated against him by falsifying his signature to indicate that he had signed off on a grievance, and that Defendant

12

Nelson denied him a lunch tray, denied him a full breakfast tray, and wrote a false misconduct to retaliate for the grievances and complaint Plaintiff submitted about Defendant Stump. (*Id.*, PageID.5–6.) Finally, Plaintiff suggests that the SCC kept him in administrative segregation for 11 months because of his protected conduct. (*Id.*, PageID.7.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has adequately alleged protected conduct; he states that he filed grievances and a PREA complaint against Defendant Stump and the others involved in the use of force and sexual assault on August 18, 2020. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

### a.      Defendant Stump

As noted *supra*, Plaintiff contends that Defendant Stump orchestrated his stabbing by another inmate. (ECF No. 1, PageID.5) He also suggests that Defendant Stump trashed his cell and threw his documents and pictures in the toilet. Plaintiff, therefore, has alleged sufficient adverse action by Defendant Stump for purposes of the second prong of a retaliation claim.

Moreover, Plaintiff specifically alleges that Defendant Stump threatened to have Plaintiff hurt if he did not sign off on his PREA grievance. (*Id.*) Later that day, Plaintiff was stabbed by the other inmate. (*Id.*) Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). Plaintiff, therefore, has adequately alleged a First Amendment retaliation claim against Defendant Stump.

### b.      Defendant Fox

Plaintiff vaguely suggests that Defendant Fox retaliated against him. (ECF No. 1, PageID.4.) As discussed above, Plaintiff's sole allegation against Defendant Fox is that he forged Plaintiff's signature to indicate that Plaintiff had signed off on a grievance. (*Id.*, PageID.5.) Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937 (DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958,

14

2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim). Plaintiff, therefore, cannot maintain his First Amendment retaliation claim against Defendant Fox because he has not alleged that Defendant Fox engaged in adverse action.

### c.      Defendant Nelson

Plaintiff suggests that Defendant Nelson denied him a full breakfast tray, denied him a complete lunch tray, and wrote a false misconduct to retaliate against Plaintiff for writing grievances and a PREA complaint against Defendant Stump. Plaintiff's allegation concerning the false misconduct is sufficient to show adverse action. *See Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (collecting cases). "[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) (citing *Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988)). Moreover, at this stage of the proceedings, the Court assumes, without deciding, that Defendant Nelson's denial of meal trays to Plaintiff constitutes adverse action.

Furthermore, Plaintiff alleges that Defendant Nelson made statements indicating that he was taking the various above-discussed adverse actions against Plaintiff because he had engaged in protected conduct by filing grievances and a PREA complaint against Defendant Stump. Although Plaintiff has by no means proven retaliation, viewing the allegations in the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has set forth a plausible First Amendment retaliation claim against Defendant Nelson.

### d.    SCC Members (Defendants Jones, Normington, and Ritter)

Plaintiff vaguely suggests that the SCC held him in administrative segregation for 11 months because of his protected conduct. (ECF No. 1, PageID.7.) When Plaintiff complained to the SCC about his confinement in segregation, he "was told sarcastically to write a grievance and you'll be in here longer." (*Id.*, PageID.6.)

Placement in segregation constitutes adverse action. *See Hill*, 630 F.3d at 473–74. Plaintiff's reference to the SCC, however, is insufficient to suggest that Defendants Jones, Normington, and Ritter personally kept Plaintiff in segregation because of his protected conduct. "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

Moreover, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges

16

the ultimate fact of retaliation with respect to the SCC members, which is insufficient to state a claim under Section 1983. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). The temporal proximity that supports the inference of retaliation for Plaintiff's claims against Defendant Stump, as well as the statements made by Defendant Nelson suggesting that he took adverse action because of Plaintiff's grievances and PREA complaint, are not present with respect to any retaliation claims against the SCC members (including Defendants Jones, Normington, and Ritter). Moreover, Plaintiff himself admits that he was placed in segregation for his own safety and pending transfer after the stabbing by the other inmate. The fact that Plaintiff remained in segregation for 11 months does not support an inference that his placement therein was motivated by retaliation. Because Plaintiff's claims of retaliation against the SCC members (including Defendants Jones, Normington, and Ritter) fall far short of the minimum pleading standards under Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," these claims will be dismissed.

### 4.    Fourth Amendment Claim

The Court has construed Plaintiff's complaint to assert a Fourth Amendment claim against Defendant Stump for entering Plaintiff's cell and throwing his property into the toilet. (ECF No. 1, PageID.5.)

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim based upon a prison official searching a prisoner's cell and destroying some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed. First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a ionsmyriad of 'institutional needs and objectives' of prison

facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. For similar reasons, the Court held that the Fourth Amendment "does not protect against seizures in a prison cell." *Id.* at 528 n.8.

Like in *Hudson*, Plaintiff simply has no expectation of or right to privacy in his prison cell. The Court, therefore, will dismiss any Fourth Amendment claim asserted against Defendant Stump.

### 5.    Eighth Amendment Claims

Plaintiff asserts that several of the named Defendants violated his Eighth Amendment rights in various ways. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual

18

punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.  Excessive Force

Plaintiff contends that Defendants Stump and Unknown Parties #1-4 violated his Eighth Amendment rights by slamming him on the ground, causing him to start to lose consciousness. (ECF No. 1, PageID.4.) Plaintiff's claim must be analyzed under the Supreme Court authority

limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove...violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011). Given Plaintiff's allegations against Defendants Stump and Unknown Parties #1-4, the Court concludes that Plaintiff has set forth plausible Eighth Amendment excessive force claims against these individuals.

### b.     Sexual Assault

Plaintiff also contends that, after he was slammed to the ground, Defendants Unknown Parties #1-4 held him down while Defendant Stump yanked his penis and scrotum. (ECF No. 1, PageID.4.) Defendants Unknown Parties #1-4 then flipped Plaintiff over, and Defendant Stump forced his fingers into Plaintiff's rectum. (*Id.*)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S.

at 848–49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards). Here, Plaintiff alleges that Defendants Stump and Unknown Parties #1-4 had slammed him to the ground, that Defendants Unknown Parties #1-4 held him down, and that Defendant Stump sexually assaulted him by grabbing his penis and scrotum and forcing his fingers in Plaintiff's rectum. As set forth above, Plaintiff contends that this assault occurred during a use of excessive force by these individuals. At this stage of the proceedings, the Court concludes that Plaintiff has sufficiently set forth Eighth Amendment sexual assault claims against Defendants Stump and Unknown Parties #1-4.

### c.      Stabbing by Other Inmate

Plaintiff asserts that on June 13, 2021, he was stabbed by another inmate who was urged to do so by Defendant Stump. This assault can be characterized as deliberately indifferent to Plaintiff's safety or, alternatively, as an "unnecessary and wanton infliction of pain," which is also prohibited by the Eighth Amendment. *See Rhodes*, 452 U.S. at 346. Plaintiff's allegations, therefore, are sufficient to state an Eighth Amendment claim against Defendant Stump premised upon Plaintiff's assault by another inmate.

### d.      Issues with Meals and Placement on Food Loaf

Plaintiff contends that on December 16, 2021, Defendant Nelson gave him a breakfast tray that was "missing a big portion of the food on the menu that day." (ECF No. 1, PageID.5.) That same day, Defendant Nelson refused to give Plaintiff his lunch tray. (*Id.*)

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. Thus, the deprivation of a few meals for a limited time generally does not rise to the

level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *see also Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (finding the deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (finding the denial of a few meals over several months does not state a claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (finding the deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

Considering this case law, Plaintiff's claim that Defendant Nelson deprived him of a lunch tray on one occasion fails to state an Eighth Amendment claim. Likewise, if the deprivation of a few meals for a limited period fails to state an Eighth Amendment claim, it stands to reason that Plaintiff's allegations concerning items missing from his breakfast tray fall far short of the serious deprivations protected by the Eighth Amendment. *See Turner v. Gilbertson*, No. 2:17-cv-65, 2017 WL 1457051, at *5 (W.D. Mich. Apr. 25, 2017) (concluding that an inmate failed to state an Eighth Amendment claim when he "missed two packets of crackers—far less than even one meal—and was forced to use a broken spoon to eat the same meal"). Plaintiff's Eighth Amendment claims about his food trays, therefore, must be dismissed.

Plaintiff also vaguely suggests that he was temporarily placed on a food loaf diet. (ECF No. 1, PageID.6.) The Sixth Circuit, however, has repeatedly held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g.*, *Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002); *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Myers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990). Thus, Plaintiff's Eighth Amendment claims concerning his placement on a food loaf diet will also be dismissed.

### e.    Placement in Segregation

Finally, Plaintiff suggests that his placement in segregation for 11 months violated his Eighth Amendment rights because he was subject to a loss of privileges. (ECF No. 1, PageID.7.) However, because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is typically insufficient to support an Eighth Amendment claim. *See Hudson*, 503 U.S. at 9. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *see also Lacey v. Michigan Dep't of Corr.*, No. 95-1097, 1995 WL 564301 (6th Cir. Sept. 21, 1995) (placement in detention did not violate Eighth Amendment); *Eaddy v. Foltz*, No. 84-1419, 1985 WL 14065 (6th Cir. Dec. 18, 1985) (whether an Eighth Amendment claim is stated for placement in segregation depends upon severity or pervasiveness of conditions). Here, Plaintiff's complaint is devoid of any facts alleging that he was denied his basic human needs while in segregation. Thus, Plaintiff's Eighth Amendment claim regarding his placement in segregation and the loss of privileges therein will be dismissed.

###### 6.      Fourteenth Amendment Due Process Claims

###### a.      Deprivation of Property

The Court has liberally construed Plaintiff's complaint to assert a Fourteenth Amendment due process claim for deprivation of property against Defendant Stump for trashing his cell and throwing his documents and pictures into the toilet. (ECF No. 1, PageID.5.) Any such claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Parratt*, 451 U.S. at 541. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson*, 468 U.S. at 530–36. Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly,

24

Plaintiff's due process claim against Defendant Stump regarding the deprivation of his property will be dismissed.

### b.      False Misconduct

According to Plaintiff, Defendant Nelson issued him a false misconduct requesting a sanction of seven days' food loaf. (ECF No. 1, PageID.6.) Plaintiff appears to allege a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

As an initial matter, Plaintiff's complaint is wholly devoid of any facts concerning what the misconduct ticket charged him with and if he was convicted of the misconduct. Plaintiff vaguely suggests that he was charged with misuse of the lunch tray. In any event, Plaintiff does not allege that any misconduct conviction had any effect on the duration of his sentence—and he cannot. Plaintiff is serving a life sentence without parole imposed in 2007 for two counts of first-degree murder. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=342571 (last visited Oct. 13, 2022). For inmates serving sentences for offenses committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantange*, 418 F. App'x 408, 412 (6th Cir. 2011). As noted

*supra*, Plaintiff's life sentence precludes him from the possibility of parole. Even if he accumulated disciplinary time, that sanction would not warrant due process protections.

Plaintiff suggests that he was in segregation at the time the misconduct was issued, and that he remained in segregation for 11 months. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See, e.g., Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years

26

of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

While Plaintiff may have been housed in segregation during his disciplinary proceedings, his complaint is devoid of allegations suggesting that he was found guilty of the misconduct and sanctioned to segregation. Rather, Plaintiff only mentions a sanction of seven days' food loaf. Being temporarily fed food loaf, however, does not implicate a due process liberty interest. *See Griffis*, 47 F. App'x at 328; *Turnboe v. Gundy*, 25 F. App'x 292, 293 (6th Cir. 2001). Plaintiff fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest because of the allegedly false misconduct ticket. His Fourteenth Amendment due process claim against Defendant Nelson will, therefore, be dismissed.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Jones, Normington, Ritter, and Fox will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's request for declaratory relief; (2) Plaintiff's official capacity claims; (3) Plaintiff's Fourth Amendment claim; (4) Plaintiff's Eighth Amendment claims concerning issues with his meal trays and temporary placement on food loaf; (5) Plaintiff's Eighth Amendment claims concerning his placement in segregation; and (6) Plaintiff's Fourteenth Amendment due process claims concerning the deprivation of his property and the issuance of a false misconduct. The following claims for damages remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Stump and Nelson; (2) Plaintiff's Eighth Amendment excessive force and sexual

assault claims against Defendants Stump and Unknown Parties #1-4; and (3) Plaintiff's Eighth Amendment claim against Defendant Stump for urging another inmate to stab Plaintiff.

An order consistent with this opinion will be entered.


Dated:    October 21, 2022                                   /s/ Sally J. Berens
                                                             SALLY J. BERENS
                                                             U.S. Magistrate Judge